Kenneth KENNEDY, Petitioner,

v.

REAL ESTATE COMMISSION of the
District of Columbia, Respondent.

No. 3489.

District of Columbia Court of Appeals.

Argued June 22, 1964.

Decided July 31, 1964.

Herman Miller, Washington, D. C., for petitioner.

Ted D. Kuemmerling, Asst. Corp. Counsel, with whom Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief for respondent.

Before QUINN and MYERS, Associate Judges, and CAYTON (Chief Judge, Retired).

CAYTON, Judge.

This is a petition to review a suspension of a real estate broker's license by the Real Estate Commission of the District of Columbia. The petitioner challenges only the jurisdiction of the Commission to act, and not the merits of the suspension.

Petitioner's claim of error is that the Real Estate Commission was improperly constituted of five members instead of three as provided by 45 D.C.Code § 1403 (1961) when it ordered suspension of his license; and therefore, the Commission was without jurisdiction to order the suspension. The District government answers that § 1403 which was passed in 1937 [1] was superseded by Reorganization Plan No. 5 of 1952 [2] which provides that the Board of Commissioners of the District of Columbia shall have the authority to determine the composition and membership of the Real Estate Commission.

The history of this legislation is as follows. As previously mentioned the original

1. 50 Stat. 788 (1937).

2. 66 Stat. 824, D.C.Code, Title I, Appendix.

Real Estate Commission was created by the Congress in 1937 to be composed of three members. That Commission went out of existence when its status was abolished by Congress in Reorganization Plan No. 5 of 1952. Plan No. 5 was submitted pursuant to the Reorganization Act of 1949 [3] which gave the President the power to submit plans for the reorganization of the District of Columbia government to both Houses of Congress. Such a Plan becomes law after 60 days if there has not been passed by either of the two Houses a resolution stating that that House does not favor the Reorganization Plan. Practically speaking then, any Plan approved in this manner is an Act of Congress, and this is the status of Reorganization Plan No. 5 of 1952. Plan No. 5 provides:

"Section 1. *Functions transferred to the Board of Commissioners.*—There are hereby transferred to the Board of Commissioners of the District of Columbia * * * all functions of the following named offices and agencies of the Government of the District of Columbia * * * (specifically naming the Real Estate Commission among others).

"Sec. 2. *Abolition of agencies.*—(a) The offices and agencies listed in section 1 hereof, including the offices of the heads of such agencies, are abolished. * * *

"Sec. 3. *Performance of functions of Board.*—(a) * * * the Board of Commissioners is hereby authorized to make * * * such provisions as it deems appropriate to authorize the performance of any of its functions, including any function transferred to or otherwise vested in the Board of Commissioners by this reorganization plan * * *.

"Sec. 4. *Establishment of new offices.*—(a) There are hereby estab-

lished in the Government of the District of Columbia so many agencies and offices * * * as the Board of Commissioners shall * * * determine."

The broad scope of Reorganization Plan No. 5 was indicated by the language of Senate Report No. 1735, 82nd Cong., 2d Sess., pages 1 and 2 (1952), when the Senate Committee on Government Operations, in recommending approval of the Plan, said:

"In reporting on Reorganization Plan No. 5 of 1952, the Committee on Government Operations desires to call to the attention of the Senate that the proposal is actually not a detailed reorganization plan, but is, in effect, a carte blanche delegation of authority to the Board of Commissioners of the District of Columbia to reorganize the major part of the District government at their discretion subject to certain limitations set forth in the plan."

To the Board of Commissioners then, were transferred the functions of the Real Estate Commission, and simultaneously the power to delegate those functions to some agency created by it.[4] Pursuant to Plan No. 5 it established a Real Estate Commission as one of the subordinate bodies of the Department of Occupations and Professions. [See Reorganization Order No. 59, Part I (D.C. Code, Title I, Appendix)] and through Part VII of Reorganization Order No. 59 transferred to the Department of Occupations and Professions the functions and positions of the Real Estate Commission including the duties, powers and authorities of its officers and employees. Then on September 19, 1963, the Board of Commissioners amended Part V, Section E, of Reorganization Order No. 59 to state:

"E. The Real Estate Commission of the District of Columbia shall be com-

---

3. 63 Stat. 203–207, 5 U.S.C.A. §§ 133z to 133z–15.

4. There was no legal bar to the Commissioners themselves performing these functions.

posed of four (4) members appointed by the Board of Commissioners. In addition thereto, the Finance Officer, D.C. (formerly the Assessor, D.C.) shall continue to serve, ex-officio, as Chairman of the Real Estate Commission, and the Chief of the Property Tax Division, Finance Office, shall serve, ex-officio, as his Alternate, but without added compensation for their services as such."

Thus in tracing the creation of the present five member Real Estate Commission the language as well as the intent of the Congress has been clear. There is no doubt at all that Congress gave the Board of Commissioners the authority to determine the number and composition of the several Boards and Commissions that it was given the power to create pursuant to Reorganization Plan No. 5 of 1952.

Petitioner argues that the Plan was an improper delegation of power by the Congress to the Board of Commissioners to act as a legislative body for the District (which power is vested in the Congress) rather than merely giving the Commissioners the power to discharge their administrative functions. This contention is clearly erroneous. Congress in exercise of its legislative function need not determine the number and composition of each agency of the District of Columbia government. The Commissioners properly exercised their power to create an agency and redelegate the duties Congress had seen fit to transfer to the Commissioners. The clear direction of Congress to the Board of Commissioners in §§ 3 and 4 of Reorganization Plan No. 5 was to establish so many agencies as it should determine in order to perform the duties involved. The authority to fill in the details of the Congressional authorization cannot be deemed an improper delegation of power.

Affirmed.